28027. KIDD *et al.,* executors, *v.* WILLIAMSON.

Decided March 15, 1940. Rehearing denied March 30, 1940.

*Claud F. Brackett, Roy S. Drennan, A. J. Hall,* for plaintiffs in error.

*Harold Karp,* contra.

MacIntyre, J. This case involves the correctness of the judge's order overruling the demurrer to the plaintiff's (servant's) petition in an action by her to recover damages against the defendant (master) for personal injuries alleged to have been sustained while descending the back steps of the defendant's home and while the plaintiff was employed by the defendant as his housekeeper. The petition in effect alleged that the plaintiff, employed as housekeeper for the defendant and having no knowledge of carpentry or of repairing steps, assisted the defendant in repairing them. However, thereafter she alleged that she assisted the defendant in repairing, in that "she immediately proceeded with the repairing of said steps [approximately twelve months before the injury], in the manner and under the express direction of the defendant who supervised the repairing, and with the tools and materials furnished to her by the defendant; and petitioner shows that the defendant marked off the wood used in repairing the steps, showing petitioner where to saw it, and that defendant placed and held the nails so that petitioner could hammer them in place; . . that the tread and stringer of said steps were in a rotted condition around the area where the nails used to secure the tread to the stringer were fastened, causing the nail-holes to soften and enlarge and allowing the nails to become loosened;" that about twelve months thereafter she was descending said back steps (alleged to be the "only means of exit and entrance from the rear of said dwelling-house of defendant") ; and while so doing, one of the treads thereof slipped

loose from the stringer, causing her to fall and receive certain alleged injuries in the amount of $10,000. The plaintiff alleged that the defendant was negligent "in allowing said tread to remain on the stringer of the steps in its rotten condition, when the defendant knew or should have known that the wood being rotten the nails would not hold." The defendant died pending the suit, and his executors were made parties defendant. The plaintiff then amended her petition by striking $10,000 and inserting in lieu thereof $25,000 as the amount of damages.

It seems to us, construing the petition most strongly against the pleader, that the tread was in a "rotten condition" at the time of the repairing of the steps approximately twelve months before the injury, in which repairing the plaintiff participated "in the manner and under the express direction of the defendant who supervised the repairing, and with the tools and materials furnished her by the defendant; and petitioner shows that the defendant marked off the wood used in repairing the steps, showing petitioner where to saw it, and that defendant placed and held the nails so that petitioner could hammer them in place." Thus, at the time of the repairing of the steps, the servant's opportunity or means of obtaining knowledge of the material conditions which created any risk at that time were the same as that of the master. Whatever defects were brought about by the repair of the steps, and which might have brought about a risk at that time, were within the comprehension of any adult of ordinary intelligence, irrespective of the question whether he had or had not any special experience or training in the repair work, which they together had done on that occasion. While the servant, before the time of this repair, was under no obligation to inspect, and did not assume the risk from the failure of the master to do his duty, unless the servant knew of that failure and of the attendant risk, when the servant and the master together repaired the steps on that occasion the result of any risk arising from that repair was within the comprehension of any adult of ordinary intelligence. The servant knew of the master's failure (if any) to inspect at the time of the repairing and of the attendant risk (if any) ; so if the injury had occurred thereafter on that day or the next day, the servant could not recover. Whatever defect the steps had at the time of the repair she knew, or it was deemed to be in her comprehension; for she assisted in

repairing this simple and ordinary thing, and was fully acquainted with the details of the construction of the steps as repaired, or at least as to the construction of that part of the steps which she claimed was defective.

If the servant produced or assisted in producing the conditions by something she herself had done in connection with the perform- ance of her duties or incidental thereto, to wit, the building or re- pairing of the steps, her action is not maintainable where she used, for a period of approximately twelve months, the defective steps which she helped to construct or repair, the steps being such a simple and ordinary thing that any person of ordinary skill and knowledge would know, as well as a person of highest skill and technical training, that the rotten tread through which she drove the nails while the master held them in place, would likely cause an accident and injury to persons using the steps. If she did not specifically know how far the defect (of which she was presumably aware) had developed on the day of the accident, it was within her general knowledge as something likely to occur. The doctrine of the "assumption of skill" on the part of the master is not appli- cable. *Hines* v. *Little,* 26 *Ga. App.* 136 (3) (105 S. E. 618); *Dartmouth Spinning Co.* v. *Achord,* 84 *Ga.* 14, 16 (10 S. E. 449, 6 L. R. A. 190). The preliminary facts pleaded do not warrant the conclusion of the pleader that they establish the ultimate fact that the knowledge of the skilled and experienced carpenter (the mas- ter) would have been superior to the knowledge of the normal per- son of average intelligence (the servant) as to what might likely occur as a result of the repairs of the character made. See *Lewis* v. *Amorous,* 3 *Ga. App.* 50, 53 (59 S. E. 338); *Cedartown Cotton & Export Co.* v. *Miles,* 2 *Ga. App.* 79 (58 S. E. 289).

In *Atlantic & Birmingham Railroad Co.* v. *Reynolds,* 117 *Ga.* 47, 52 (43 S. E. 456), it was said: "If there are latent defects in the machinery, tools, or appliances, or in the construction or condition of the place for work, which are known to the master, or which he could know by the exercise of ordinary care, and which are unknown to the servant, then the master must give the servant warning of the same. Civil Code, § 2611 [Code of 1933, § 66-301]. A servant injured by reason of a latent defect or danger in the machinery or tools supplied, or in the construction or condition of the place for work, can not recover damages against the master, unless it be

shown that the latter knew or ought, to have known of its existence, and that the former did not know and had not equal means of knowing such fact, and by the exercise. of ordinary care could not have known thereof. Civil Code, § 2612" (1933, § 66-303). Under the ruling in the *Reynolds* case, we are of the opinion that the petition, construing it most strongly against the pleader, failed to set forth a cause of action, and that the judge erred in overruling the demurrer. 4 Labatt's Master & Servant, 3788 (4); Stewart *v.* Ferguson, 44 App. Div. 58 (60. N. Y. Supp. 429); Litchfield Car &c. Co. *v.* Romine, 39 Ill. App. 642; DeLisle *v.* Ward, 168 Mass. 579, 580 (47 N. E. 436).

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*